**RISNER et v STATE ex MARTIN et**

Ohio Appeals, 3rd Dist, Hancock Co

No 366. Decided March 31, 1936

A. G. & R. E. Fuller, Findlay, for plaintiffs in error.

Jackson E. Betts, Findlay, for defendants in error.

**OPINION**

By GUERNSEY, J.

This is an error proceeding from the Court of Common Pleas of Hancock County.

In that court the plaintiffs in error were defendants and the defendants in error were plaintiffs, and the parties will be hereafter referred to in the relation they appeared in that court.

The action was originally brought by the State of Ohio on the relation of Charles Martin, Merritt Metzger, L. O. Fiegel members of the Board of Trustees of Biglick Township, Hancock County, Ohio, as plaintiffs, against Lee Risner and Johnson (Jonathan) Newcomer as defendants, before William H. Lefferson, Justice of the Peace of Washington Township, Hancock County, Ohio, and from the judgment of that court an appeal was taken to the Common Pleas Court of Hancock County.

The action is a civil action to recover a judgment in the nature of a penalty for the alleged violation by the defendants of the provisions of §2555 GC, which provides as follows:

"Sec 2555 GC. Penalty for bringing into city, township or county. If a person transports, removes or brings, or causes to be transported, removed or brought a poor or indigent person into a city, township or county in this state, without lawful authority, and there leaves such poor or indigent person, knowing that such city, township or county will probably become chargeable with his support, the person so offending shall forfeit and pay the sum of fifty dollars, for such offense, for the use of the poor of the city, township or county in which the indigent person is left, to be recovered by civil action, in the name of the state, before any court of competent jurisdiction. When a public official furnishes transportation to an indigent person, it shall be done only after investigation and satisfaction that such transportation will make it possible for such person to be cared for by responsible persons; and the transporation furnished shall be to final destination in this state or elsewhere."

The violation alleged is that the defendants on or about the 27th day of March, 1935, caused one Mexico Shepherd an indigent person, a resident of the State of Kentucky, to be removed and transported from the State of Kentucky to Biglick Township, Hancock County, Ohio, for the purpose of leasing or renting to said Mexico Shepherd a share or interest in certain real estate known as the "onion marshes" and leased or rented to the said Mexico Shepherd a place for him and his family to reside; said defendants knowing that said Township would probably become chargeable with his support.

On the trial of the case in the Common Pleas Court, a verdict was returned in favor of plaintiffs. A motion for new trial having been filed and overruled, judgment was entered on the verdict and this proceeding in error is brought to reverse said judgment.

The material facts in the case, as shown by the bill of exceptions, are as follows:

Newcomer is the owner of certain lands and manages the same together with other so-called "onion marsh" lands owned by his father, situated in Biglick Township. Risner is a principal crop tenant of Newcomer and also an agent and employee of Newcomer.

Sometime in February, 1935, one Mexico Shepherd (Sheppard) then a resident of the State of Kentucky, came to Biglick Township and there interviewed Risner in regard to sub-leasing a parcel of the land under lease from Newcomer to Risner. Risner demurred on the ground that there was no fit place upon the premises in which Shepherd and his family could live; but Shepherd was insistent and the upshot of the conversation was an agreement between Risner and Shepherd for a crop term lease of some of the land which Risner held under lease from Newcomer to Shepherd, together with the use of some rooms in an old building on said premises called "the barn," for living quarters, possession of the premises not to be given until the weather moderated in the spring and the same to be surrendered as soon as the crops were harvested and made ready for market, in any event not later than December first of the same year. Shepherd returned to Kentucky. Sometime in March or the first of April, 1935, Risner's son, at his direction wrote a postal card to Shepherd in which he stated that the place was ready. Following the receipt of this postal card by Shepherd, Shepherd returned with his family and entered into possession of the premises leased to him by Risner, as above mentioned, installed himself and family in two rooms of the barn referred to, where h continued to reside pursuant to the term of his oral agreement with Risner, unti about the third day of November, 1935, when he surrendered possession and returned to Kentucky.

Shepherd farmed the land leased him by Risner, on a share basis pursuant to his oral agreement with Risner, and shortly before the time he returned to Kentucky in November of 1935 he sold his share of

the crops and received between three and four hundred dollars in cash for the same. During his sojourn in Biglick Township he purchased an automobile in which he moved his family to Kentucky, and he employed Risner, at a price of nineteen dollars, to haul his household goods and personal belongings in a truck to his home in Kentucky.

During his sojourn in Biglick Township, Shepherd did not at any time apply for, or receive, any aid from the township trustees for the support or maintenance of himself and family which consisted of himself, his wife, their eight children and his wife's brother.

The Township Trustees of Biglick Township were not advised of and did not consent to the removal or transportation of Shepherd to the township.

At the time Shepherd came to Biglick Township to carry out the terms of his lease he was the owner of a farm in Kentucky upon which there was a mortgage for one hundred and fifty dollars.

The evidence does not show that Shepherd or his family were at any time charges on public charity in Kentucky. When Shepherd removed to the farm in Biglick Township he brought some provisions with him, including some molasses, and also claimed to have brought one hundred and eighty dollars in cash with him but under his testimony it appears that the amount of cash he brought with him is rather indefinite, although it is undisputed that within a short time after he settled on the farm in Biglick Township he bought a cow and had some money left over, and that in the latter part of April, 1935, when this case was tried before the justice of the peace, he testified that he still had provisions and money sufficient to carry him until some part of his crops would be ready for market.

During his residence in Biglick township, Shepherd with his wife, eight children and his wife's brother, lived in two rooms partitioned off inside the barn. There were no carpets on the floor which was of rough lumber with air coming up through the floors, and Shepherd's children were, in the language of the county health commissioner, "very scantily dressed, ragged, dirty." The furniture in Shepherd's apartment consisted of two beds, a stove, two or three chairs in the west room, and in the east room a table and a couple of chairs, a couple of store boxes and a cookstove. On the beds there were some straw ticks, some comforts, possibly a blanket, and a

horse blanket on one. As stated by the defendants themselves, the quarters occupied by Shepherd were "not fit to live in."

There are a number of assignments of error, but in the view we take of the case it will be necessary to consider only the assignment that the verdict and judgment are contrary to law in that they are not sustained by any evidence, as a consideration of this assignment disposes of the whole case.

In order for the plaintiffs to recover from the defendants in this action the penalty prescribed by §2555, GC, it was incumbent upon them to prove:

1. That the defendants caused the said Shepherd to be removed or transported to Biglick Township.

2. That the said Shepherd was at the time of such removal or transportation, a poor or indigent person within the meaning of said section.

3. That the removal or transportation was without lawful authority.

4. That said Shepherd was left by the defendants in said township.

5. That the defendants knew that said township would probably become chargeable with his support.

If there is a failure of proof of any of these facts, the verdict and judgment are contrary to law as not being sustained by any evidence.

In order to determine whether there is such failure of proof, we will consider the meaning of the phrase "a poor or indigent person" as used in said section.

Sec 2555 GC appears at the end of the chapter on county commissioners. It is one of a group of miscellaneous sections concerning indigent persons who are a charge upon the public. The section is what is technically known as "a poor law." It is also a penal law and is therefore to be strictly construed.

In 21 Ruling Case Law at pages 703 and 704, in commenting upon poor laws, it is stated:

"The word 'poor' is used in two senses, the one as opposed to the word 'rich,' the other as indicating those who are entirely destitute and helpless, and therefore dependent on public charity. It is in the latter sense only that the term is used in the poor laws. The term 'pauper' is likewise used in two distinct senses though not

so divergent as in the case of the term 'poor'. In the one case it is synonymous with the term 'poor person' as understood in the poor law, meaning one destitute and a proper subject for public aid. In the other and more technical sense it means one who is actually receiving public aid, one who is eating the public bread. For general purposes the terms 'poor person,' 'pauper', 'indigent', and 'destitute', may be regarded as synonymous."

And in 48 C. J., at page 428, it is stated that generally the terms "pauper," "poor," "poor person," "indigent person", "person in distress," and so forth, in statutes providing for the relief of such persons, are used to describe that class of persons who are so destitute and helpless as to be dependent for their support upon public charity.

Applying these definitions to the provisions of §2555 GC, it is clear that the words "poor or indigent" modifying the word "person" are either synonymous as indicating those who are entirely destitute and helpless and therefore dependent on public charity, or that the word "poor" is used in the technical sense as indicating one who is actually receiving public aid, and the word "indigent" is used in the non-technical sense as meaning one destitute and a proper subject for public aid.

Adopting either construction, the burden was on the plaintiff to prove that at the time Shepherd came to Biglick Township and entered into the possession of said premises he was actually receiving public aid or was entirely destitute and helpless and therefore dependent on public charity.

There is an entire failure of proof in this respect. On the contrary the evidence affirmatively shows that Shepherd at the time was not receiving public aid and that he had provisions and money and was not entirely destitute and helpless and therefore dependent on public charity. The verdict and judgment on this issue are therefore contrary to law in that they are not sustained by any evidence, and it is therefore unnecessary to consider whether there is any evidence tending to prove the other facts mentioned.

For the reasons mentioned, the judgment of the Common Pleas Court will be reversed and the defendants having at the close of plaintiffs' evidence made a motion for a directed verdict in their favor and having renewed their motion for a directed verdict at the close of all the evidence, and having moved for judgment notwithstanding the verdict, this court rendering the judgment the trial court should have rendered, will enter final judgment in favor of plaintiffs in error, at costs of defendants in error.

KLINGER, PJ, and CROW, J, concur.